**TEXAS POWER & LIGHT CO. v. BROWN-WOOD PUBLIC SERVICE CO. et al.**

No. 8439.

Court of Civil Appeals of Texas. Austin.

Oct. 30, 1935.

McCartney, McCartney & Muse and Woodruff & Holloway, all of Brownwood, for appellant.

H. O. Clark, of Waco, and Callaway & Callaway, of Brownwood, for appellees.

McCLENDON, Chief Justice.

Appeal from an interlocutory order denying to Texas Power & Light Company a temporary injunction in a suit to perpetually enjoin the Brownwood Public Service Company (herein called appellee) and others from erecting electric light poles in the public streets of Brownwood and stringing wires thereon.

The questions in the case involve the correctness of the action of the city council of Brownwood (a home rule city of over 5,000 inhabitants) in refusing upon electors' petition to call a referendum election to confirm the franchise ordinance under which appellee was operating.

The controlling facts are without substantial dispute. They are:

The Brownwood charter requires the publication of franchise ordinances and provides that no such ordinance shall "take effect or become a law or contract or vest any rights in the applicant therefor until after the expiration of twenty days from the last publication of said ordinance, as aforesaid."

The last publication of the involved ordinance was June 10 (1935); the twenty days, therefore, expiring June 30th. A referendum petition containing 1,041 signatures was presented June 28th, and at the same time a counter petition, requesting withdrawal from the referendum petition, and containing 144 names, was presented. The council on that day referred the petition and counter petition to the city secretary and county tax collector for checking "against the poll and exemption lists on file with the county tax collector, to ascertain the number of qualified voters" thereon. The council met again on July 1st, and received the report of the named officers but took no further action thereon. This report showed that, according to the tax rolls, there were 670 qualified voters on the petition, 144 of whom were on the counter petition, leaving 526 remaining on the referendum petition. In the meantime, and up to and including June 30th, applications for withdrawal had been filed with the city secretary, which reduced the number of voters, as shown by the tax rolls, below the requisite 500. R. S. art. 1181. The council rejected the petition on July 5th, because of insufficient signers still remaining thereon who were qualified voters under the following recitation: "We found that there were six hundred and seventy-eight qualified voters according to the Tax Collector's records of Brownwood County, who signed these petitions. And from these lists there was deducted upon counter petitions two hundred seventy two (272) signers, and were added to, by petitions those who had asked that their names be readded, nine (9). Making a corrected total of four hundred fifteen (415) signers."

The record shows that on June 30th there were on the petition 463 qualified voters according to the 1934 tax rolls, 26 qualified voters who had not obtained 1934 exemption certificates but who had procured such certificates prior or subsequently to the 1934 rolls, and 19 qualified voters who had procured no exemption certificates for any year; making in all 510 qualified voters on the petition. Between June 30th and the council's action on July 5th, withdrawals were presented sufficient in number to reduce the total qualified voters on the petition at that time below the requisite 500.

The question of leading importance is whether the right to withdraw expired June 30th, or continued up to July 5th, when the council acted finally on the petition.

The exact question here presented is, we believe, one of first impression in this state. Appellee relies upon Stahl v. Miller, (Tex. Civ. App.) 63 S.W.(2d) 578 (error refused). The facts in that case do not, however, bring it within the unqualified rule asserted by appellee. The petition was acted upon by the council before the time (30 days in that case) within which the petition might be filed. This does not appear from the opinion, but does from the record in the case. The court did not have before it the question (here involved) whether the right to withdraw might be exercised after the time limit for filing the petition had expired and up to the time the council acted on the petition. The question there was whether the right to withdraw expired upon filing the petition. Upon this point the authorities are not uniform, and the court followed the weight of opinion in other jurisdictions. While the language employed by the court in announcing its decision is broad enough to embrace the contention of appellee, it must be construed with reference to the record then before the court. Beyond that it is dictum. Ferguson v. Johnson (Tex. Civ. App.) 57 S.W.(2d) 372. We do not regard the Stahl Case as decisive of the question at bar.

While there are a great many decisions announcing the rule, without express qualification, that the right to withdraw exists up to the time the council acts on the petition, we have found and have been cited to none expressly holding that this right extends beyond the time limit in which the petition may be filed, in those cases where such time limit is provided.

We have not been cited, nor have we found, any case which has held that the right of withdrawal (absent a showing of good cause, such as fraud, mistake, etc.) extends beyond the requisite time limit in

which the petition may be filed. On the contrary the authorities seem uniform in denying the right in those cases.

An extended review of the cases is unnecessary. One of the best-considered opinions on the subject is that of State v. City of Independence, 114 Kan. 837, 221 P. 245, 246, by the Kansas Supreme Court. Earlier decisions of that court, couched in the unqualified language of the Stahl Case, were reviewed and distinguished. We quote from the opinion:

"If, after a fixed date, names could be withdrawn from a petition but none could be added to it, the number remaining after withdrawals had been made would not necessarily show the condition of popular opinion at some subsequent time. It seems to the court that the appellees recognize the force of this distinction by saying in their brief that an election ought not to be called 'unless at the very time for ordering the election the required number of electors do in fact desire it.' A petition could hardly be expected to show how many persons at the very time of ordering an election in fact desire it when its opponents could withdraw their names and its advocates could not add theirs. That the rule invoked is based upon the theory of coexistent rights of withdrawing names and of adding them is suggested in a later case where an attempt was made to withdraw and add names after a petition had been acted upon, and the court said:

" 'The purpose of the petition is to move the school district board to make the application to the state board, and that purpose had been subserved when the prayer of the petition was granted and the application made. At that time no petitioner had added or withdrawn his name from the petition.' Cowles v. School District, 88 Kan. 603, 607, 608, 129 P. 176, 177."

Further the court say: "We discover no case in which a contrary view has been taken of a similar statute, where the effect of the time limit upon presenting the petition or adding to its signatures has been discussed. If any such exist, the views already stated preclude our following them. It seems unnecessary to discuss at length the many decisions on related questions arising under various statutes. See note, 11 L. R. A. (N. S.) 372."

Of like import are the following cases: State v. Gerhardt, 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313, and a number of other cases from that state; Roebling v. Trenton, 58 N. J. Law, 40, 32 A. 685; State v. Gregory, 26 S. D. 13, 127 N. W. 733, Ann. Cas. 1913A, 40; Southern, etc., Co. v. Carter, 184 Ark. 4, 41 S.W.(2d) 1085.

We are in accord with the principles announced in these decisions.

■ Appellee further contends that it was within the discretion of the city council, in determining the number of qualified voters on the petition on June 30th, to confine their inquiry exclusively to the 1934 poll tax rolls; relying, in this regard, upon Boynton v. Brown (Tex. Civ. App.) 164 S. W. 893, 894 (error refused), and Black v. Coons (Tex. Civ. App.) 244 S. W. 1080, 1082.

The Boynton Case was an action to compel by mandamus the city council of San Antonio to call a charter revision election. It was tried upon verified petition and answer.

In the latter: "It was alleged that the petition presented to the city council was not the petition of 10 per cent. of the qualified voters, that it contained the names of many parties who were not qualified voters of San Antonio, that it had names signed to it that were not signed by the parties named, that in at least 60 instances the same parties signed the petition many times, that in considering the petition the council had to determine many issues of fact as to residence of the signers and their qualification to vote, to determine the number of qualified voters in the said city at that time, and that in the exercise of their judgment and discretion they ascertained and determined the petition did not constitute one made by 10 per cent. of the qualified voters."

The Black Case was also one for mandamus. It appears from the opinion that the suit was permaturely filed, in that the city commission had not completed its check of the petition, nor determined its sufficiency. "At the very time when it was decreed that an 'arbitrary and illegal' refusal had been made by the city commission," the opinion reads, "they, in the exercise of the discretion conferred upon them by law, were endeavoring to ascertain the qualifications of the signers." Commenting upon the rights of the relators the court say: "The court on a proper petition, backed

by competent testimony, might have commanded the city commissioners to proceed expeditiously to perform the duty of ascertaining the status of the signers of the petition, but could not interrupt them in the discharge of a duty devolved upon them by law, and command that an election be called."

In the case at bar the city council made no effort, so far as the record shows, to ascertain whether the petitioners were qualified voters, further than to have the signers' names checked against the 1934 poll tax records, rejecting all names not shown by such records. This was manifestly the failure to perform their official duty in the premises, although their action was motivated by the honest, conscientious belief that under the law they were not required to pursue their inquiry further. The "duty of ascertaining the status of the signers of the petition" was an absolute, not a discretionary, one. Black Case, supra. That duty was not performed by confining their inquiry and limiting their decision to those only shown on the poll tax rolls. In this sense action under a mistake of law may be regarded as arbitrary, in that it is "without adequate determining principle." 4 C. J. p. 1476.

Appellee's further contention that appellant did not show itself entitled to maintain the action because it did not prove a valid franchise to use the city streets is without substantial merit. The original franchise under which appellant claimed appears to have been granted in 1901. The council minutes covering this period appear to have been missing; but several subsequent ordinances were passed referring to, recognizing, nad authorizing assignments of this franchise. Appellant had been actually operating under this franchise for many years, and its right to do so had never been brought in question. It is clear that appellant's right to use the streets was established for the purposes of this case.

The order appealed from is set aside; temporary injunction is granted as prayed for, upon execution by appellant of a bond in the sum of $500, conditioned as required by law; and the cause is remanded for trial on the merits.

Order appealed from set aside; temporary injunction granted; cause remanded.