STATE OF CONNECTICUT *v.* CHESTER MURZYN, SR., ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued March 3—decided April 18, 1955

*Ernest H. Halstedt,* assistant attorney general, with whom were *Richard E. Rapuano* and, on the brief, *John J. Bracken,* attorney general, for the plaintiff.

*Maurice W. Rosenberg,* for the named defendant.

DALY, J. For the purposes of this reservation the parties have stipulated as follows: Chester Murzyn, Jr., hereinafter referred to as the patient, was admitted to Seaside Sanatorium, a humane institution maintained by the state for the care and treatment of tubercular persons, on December 11, 1952. He remained there continuously until his discharge on December 20, 1953. The defendants are the father

and mother of the patient and are liable for reimbursement to the state for his institutional support. On December 16, 1953, on application made by the plaintiff pursuant to the provisions of § 1124c of the 1953 Cumulative Supplement to the General Statutes, the defendant Chester Murzyn, Sr., was ordered by the Court of Common Pleas to pay to the state the sum of $40 per week for the current support of the patient at the sanatorium and $30 per month on the arrearage, which on that date was found by the court to amount to $2339.39. The order was to be effective on December 23, 1953. At the time the order was entered, the combined earnings of the defendants were in excess of $200 per week.

The patient was discharged from the sanatorium on December 20, 1953. On March 10, 1954, the plaintiff, by motion, requested the court to modify the then existing order to provide that thereafter the payments, in the amounts previously ordered, be continued and applied upon the arrearage of $2339.39, against which no payment had been made. On March 19, 1954, the defendants filed petitions in bankruptcy. In each petition the scheduled liabilities totaled $3942.39, of which $2339.39 represented the state's alleged claim for the back account on the institutional support of the patient. On April 23, 1954, the plaintiff moved that the defendant Chester Murzyn, Sr., hereinafter called the defendant, be adjudged in contempt for failure to pay the sum of $30 per month as ordered by the court, the unpaid total amounting at the time to $150. On May 11, 1954, the defendant obtained a discharge in bankruptcy. The questions reserved for advice are those set forth in the footnote.[1]

---

[1] "(a) Is a sum found by the court, as the amount of support of a humane institutional patient which the father of said patient is

Section 1124c authorizes the Court of Common Pleas to make and enforce orders for payment of support directed to certain relatives, including the father or mother, of any person being supported, wholly or in part, by the state in a humane institution, "as said court shall find to be reasonably commensurate with the financial ability of any such relative, considering the number and condition of others dependent upon him." The statute also authorizes the court to make and enforce such orders for payment of past support "as such court shall find any such relative able to pay." It also provides that "[a]ny order for the payment of such support may, at any time thereafter, be set aside or altered by said court" and that the making of an order shall not affect the right of the state to be reimbursed such part of the cost of the support as remains unpaid, in accordance with the provisions of chapter 119.

The plaintiff claims that neither the sum which the court found the defendant was able to pay for the support of his son nor the amount due under order of the court for payments against the arrearage is dischargeable in bankruptcy. The Bankruptcy Act provides: "Debts of the bankrupt may be proved and allowed against his estate which are

---

able to pay, dischargeable in bankruptcy?

"(b) Is the amount due from said father under order of court for future periodic payments against such arrearage, in this case, $150.00, dischargeable in bankruptcy?

"(c) Aside from the question of the defendant's ability to pay the sum of $30.00 per month from date of the court's order until the plaintiff's motion to cite the defendant for contempt, is a discharge in bankruptcy effectual to supersede or annul the order of the state court so as to purge the defendant of any contempt?

"(d) Is the defendant liable to make payments in the months succeeding his discharge in bankruptcy until the arrearage found at $2339.39 is fully paid?"

founded upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him. . . ." 30 Stat. 562, as amended, 11 U.S.C. § 103 (a). If the obligation evidenced by the order of court dated December 16, 1953, is a debt founded upon "a fixed liability . . . absolutely owing" at the time of the filing of the petition, then it is dischargeable in bankruptcy. The word "fixed" means "settled" or "set." Webster's New International Dictionary (2d Ed.).

The defendants, in contending that both the sum which the court found the defendant Chester Murzyn, Sr., able to pay and the sum due, $150, were fixed liabilities and therefore dischargeable in bankruptcy, rely upon the provision in § 1142c that "[n]either the billing nor the receipt of a lesser rate than the per capita cost shall bar the commissioner from recovering from any liable person or his estate . . . the balance of the per capita cost remaining unpaid, or such part thereof as such person or his estate is able to pay, and the statute of limitations shall not apply to such recovery."

Section 1142c provides that each liable person shall be legally liable for the support of a patient in a state humane institution "in accordance with his financial ability and the number and condition of others dependent upon him." Section 1147c provides that the state may bring a complaint against a person made liable under § 1142c and that any court having jurisdiction may render judgment in favor of the state "for the balance of the per capita cost remaining unpaid, or such portion thereof as the court finds to be reasonably commensurate with the financial ability of any such defendant and the

number and conditions of others dependent upon him." That this right is separate from and in addition to the plaintiff's right to obtain an order for support as authorized by § 1124c is clearly shown by the provision in § 1124c to the effect that the making of such an order shall not affect the right of the state to be reimbursed the part of the cost of support remaining unpaid, in accordance with the provisions of chapter 119, which embraces §§ 1141c to 1157c, inclusive. We are not called upon to decide what effect, if any, bankruptcy of a liable person would have upon a judgment obtained against him under the provisions of § 1147c.

The language used in § 1124c is clear and unambiguous. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 8890. If the language in the text of the statute is clear, there is no occasion to resort to other aids to interpretation. *Mad River Co. v. Wolcott,* 137 Conn. 680, 686, 81 A.2d 119. There is no occasion to resort to any provision contained in § 1142c.

The words "as said court shall find to be reasonably commensurate with the financial ability of any such relative, considering the number and condition of others dependent upon him," in the first sentence of § 1124c, prescribe the nature of the order which the court may make and enforce and resultingly limit the obligation resting upon the order. The provisions authorizing the court to make and enforce orders for payment of past support "as such court shall find any such relative able to pay" and to set aside or alter any "order for the payment of such support" indisputably show that the order upon which the defendant's obligation rested was subject

to rescission or modification at any time after it was made. No court except the Court of Common Pleas, in which it was made, could undertake to enforce it. The obligation was not a debt founded upon "a fixed liability . . . absolutely owing" at the time of the filing of the petitions. See *Barclay* v. *Barclay,* 184 Ill. 375, 377, 56 N.E. 636. Neither the sum which the court found to be the amount the defendant was able to pay nor the amount due, $150, is dischargeable in bankruptcy.

The plaintiff contends that the claim is an obligation due a sovereign state and therefore it is not dischargeable in bankruptcy. Since we conclude that it is not a fixed liability and, consequently, is not dischargeable, it is not necessary to pass upon this question.

We cannot give a categorical answer to question (d) since, under the provisions of § 1124c, the order for payments may, at any time, be set aside or altered by the court. We can only say that, if the order made on December 16, 1953, is neither set aside nor altered, the defendant will be obliged to make payments in accordance with its terms until the arrearage is fully paid.

We answer questions (a), (b) and (c) in the negative.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.